No. 2031.—SUCCESSION OF PIERRE PEREUILHET.—On Opposition of Mrs. DORIA HAUTHO.

Services rendered a person during his last illness, as nurse and housekeeper, are not deemed to be gratuitous, but, on the contrary, there is an implied contract that the party receiving such services is to pay a fair compensation therefor. The fact, if it were shown, that the nurse or housekeeper lived with the man she was nursing and taking care of as his concubine, does not impair or lessen her claim for wages, unless it be alleged and shown that concubinage was the motive and cause of their living together in the first instance, and the services rendered were merely incidental to that mode of living.

APPEAL from the Second District Court, parish of Orleans. *Duvignaud, J. G. Schmidt*, for opponent and appellant. *Edward C. Guillet*, for curator and appellee.

HOWE, J. The opponent claimed $2875 for services as house servant and nurse. Her claim having been rejected, she has appealed.

The record shows that the deceased was a bachelor of some means, and that the opponent, with her children, resided in the house with him for some years prior to his death, which occurred July 4, 1 67. He kept no other servant, and had no other nurse. The opponent kept house, did the marketing, cooking and housework, and for some months prior to his death nursed him night and day. He died of consumption;

his disease was distressing and protracted, and he was an exacting patient. The opponent was assisted by her daughter, fifteen years old, and her son, a boy of twelve. One of the attending physicians speaks in great praise of the patience and assiduity with which she performed her duties of nurse, and concludes:

"I can not estimate the value of the services rendered so delicately, and rendered in circumstances requiring so much patience. I can only state that if I were placed in the same circumstances, the probability is that I would leave to the person who had thus comforted me in my last days all what I possessed of worldly goods, and my blessing as a true Christian."

We think it well settled that services rendered under circumstances like these will not be deemed to be gratuitous. No one is readily presumed to give such useful and tedious labors except under a *quasi* contract for a fair compensation. "It must be remembered," as this court said in Camfranc *v.* Pilie, 1 An. 198, "that according to the elevated morality of the civil law, no one ought to enrich himself at the expense of another, and that where a party calls upon another to do a thing, the law, in the absence of contrary proof, supposes an obligation to pay for what is done. For actions without words, either written or spoken, are presumptive evidence of a contract, where they are done under circumstances that naturally imply a consent to such a contract.

It is clear, from the record in this case, that the estate of Pereuilhet was considerably enriched by the industry and the patient care of the opponent. If he had hired other servants and nurses, the amount coming to the heirs who now resist her claim would have been considerably reduced.

We gather from the record, as a whole, a *quasi* contract on the part of the deceased to compensate the opponent for the services mentioned.

In their answer to the opposition, the appellees made the following allegation: "That said Doria Hautho for several years next preceding the death of P. Pereuilhet, lived with him as his concubine, and was so living with him at the time of his death;" and some testimony on this subject was introduced.

In the first place, the evidence on this point does not make the truth of the averment very clear; and in the second place, if it did, the fact as alleged would not, in itself, vitiate the claim of opponent. An employer can not pay off a female employe by robbing her of her virtue. Such a method of extinguishing an obligation is not known to the law. If concubinage had been alleged and proved to have been the motive and cause of the parties living together in the same house in the first instance, and the services in question to have been merely incidental to such a state of living, our conclusion might have been

different; but such is not the allegation, much less the proof; and we certainly will not presume that such was the fact.

In Viens *v.* Brickle, 8 M. 7, where concubinage, though proved, did not appear to have been the motive of the association out of which the claim arose, the court, Martin, J., said: "We can not view this circumstance as preventing or destroying any right which she may have on the defendant for a remuneration, and perhaps it increases his obligation, in a moral point of view, of doing her justice, instead of lessening it in a legal."

We think the opponent entitled to recover, and we fix the amount at $900, with interest from judicial demand.

It is therefore ordered that the judgment appealed from be avoided and reversed; that the opposition of Mrs. Doria Hautho be maintained for the sum of nine hundred dollars, with interest from December 17, 1867; that the tableau be amended by placing her as a creditor thereon for the said sum, and that the appellees pay the costs of both courts.

Rehearing refused.